Our first set of cases are numbers 18-12990 and 18-14104, Hornbeam Corporation et al. v. Halliwell Assets et al. Mr. Marks. Good morning. Good morning. If it pleases the Court, I'm Bruce Marks. I have my co-counsel, Ed Mullins, with me. We represent Appellants Panico-Samu and Halliwell Assets, Inc. Mr. Hill represents the subpoena respondents. I'll speak quickly on two statutory points. Mr. Hill will follow up on issues related to the deposition of his clients and we reserve five minutes for rebuttal. Judge Jordan, the more things change, the more they stay the same. Three years ago, I was before Your Honor in the appeal from the related Alabama proceeding. We raised two issues before Your Honor then. One, that the statutory requirement of an interested person was not met. And second, that the board proceedings, which have still not been filed, were not within reasonable contemplation. This court reversed, as you know, on the issue of the interested person because BRCA had not established it before the district court. And here we go again. First point, interested person. Hornbeam failed to meet the interested person test. It's a mandatory requirement. Why did it, and this is something that was noted in the prior decision in footnote two, why did it fail? Because it doesn't exist. Its dissolution has been completed. Under Panamanian law, when the corporation has filed for dissolution, it has three years to complete that. Once it completes the dissolution, it doesn't exist. The court made clear in Henry BRCA that the district court was required to make a finding that somebody was an interested person. In this case, Your Honor, the district court indicated that there was some type of presumption in favor of 1782 discovery. There is no presumption in favor of 1782 discovery. To the contrary, it was the burden of Hornbeam to establish each of the statutory requirements. The burden . . . So, but even if the district court's rationale is a little goofy, why is it that the dissolved entity necessarily is not an interested person? Not, I guess, within the meaning of the way we've explained it, having a reasonable interest in obtaining judicial assistance. I mean, I take it their position is, in part, the reason we're dissolved is because your client's shenanigans sort of drove us into dissolution. No, that's not their position at all. In fact, after they lost in the BBI and they were ordered to pay over $800,000 of attorney fees, that's when they dissolved. Then they filed this case at the same time. Your Honor, the reason that they're not an interested person is because they don't exist. But, I guess, you're saying, like, as a matter of Panamanian law, we should just take that as an article of faith. I mean, don't they have an expert that says that's not quite right? You know, maybe this is like an estate or something that survives. There's some residuum that survives that could pursue relief. Your Honor, we're not asking this court to take anything of a matter of faith. We have submitted expert declarations. We submitted four of them. The expert declaration from a respectable Panamanian attorney, which cited the Panamanian corporate code, which is what governs, said that you have three years to file a case after you've filed your dissolution papers. If you haven't filed it within the three years, you can't file and you don't exist. What does their guy say? I mean, they've got a respected Panamanian judge who has something to say for them as well. Their guy doesn't cite to the corporate code in Panama. He cites to the code that was enacted later that applies generally to companies. And that code was enacted in part to clarify that corporations may file for reinstatement once the three-year period has expired. So there is a issue of foreign law. The courts in 1782 cases practically by definition address issues of foreign law. This is nothing that's novel. The leading Supreme Court cases entail, the Supreme Court entail went into an extended discussion of EU law to determine whether the applicant in that case had rights to participate in the EU proceedings. This court did the same thing. It was remanded to the district court to take a look at BVI law to see if BRCA, which is not an applicant here, had a right to participate in the BVI. There is an issue of foreign law that is squarely before this court. And what do you want us to do, just to decide the issue of foreign law de novo and decree that your expert is more persuasive than the other side's expert? It is an issue of law. This court has de novo review. And we ask your honors, the district court, I would suggest didn't really address the issue, but the answer is yes. This court should address the issue of Panama law. It's a matter of law. And your honor, whether it's based on the experts, whether it's based on your reading of the statute, whether it's based on the presumption in Panama that we have here that specific governs the general, your honor should conclude that Hornbeam had three years to file the case. It is now no longer in existence. It's not an interested person. Therefore, it doesn't meet the interested person test. And by definition, if it's not an interested person, foreign proceedings are not within reasonable contemplation. Your honor should vacate the order below and should order that the court undo the discovery. And the discovery that has been obtained should be destroyed. What is our standard of review on the top side before we get to the issue of foreign law? What's the top side mean, your honor? I apologize. What is the order being appealed? The order being appealed is the omnibus order, which was done de novo, which granted the 1782 application and rejected our objections that Hornbeam was no longer an interested person because it didn't exist. That's the omnibus order, your honor, because I'm going to speak quickly. I thought that what was technically up here, and it may not change the answer you gave, but what's here is the omnibus order, which ultimately denies your motion to vacate the initial order. Is that not correct? That is correct, your honor. So my question is, is there a, what I call the top side standard of review over a motion to vacate that impacts this case in any way, or do we immediately drop down to the subsidiary standards of review for every determination that district court made, factual, legal, or mixed question? Your honor, the district court decided the issue of the application de novo. There was an issue of how to deal with the magistrate's decision, and rather to get into the issue of whether that was a recommendation or a final decision, the decision herself. No, I know. Yes. Even if Hornbeam can no longer bring a cause of action, is it still possible that it could be an interested party? No. It can't be because the only party that could bring an action in the BVI, and this was litigated, and it's in the record in the Ohio State Court, because what they, originally they filed for discovery in New York. They took that discovery. They improperly used it in Ohio. They filed an action in Ohio. It was dismissed. Why was it dismissed? Because the court held that Hornbeam had to bring its action in the BVI, and that the only party that had a right to bring the action in the BVI under the Section 184 of the BVI Act was Hornbeam. There's nobody left who can bring an action in the BVI, but Hornbeam can't be interested if it doesn't exist. It doesn't exist. It could have filed for reinstatement, Judge Wright, but it didn't. So there's no there there, Your Honor, if I answered your question. In other words, I understand your position is, up or down, if Hornbeam cannot bring the cause of action, since it doesn't exist legally in Panama or the BVI, then you win. That would be our position, but that was stated persuasively. I'm going to sit down. I'm sorry for going over, but I wanted to answer your question. Let's not forget, there's nobody else who was granted discovery here. This is different than in Alabama. In Alabama, the District Court sort of drove by the issue of whether Bracca had standing and allowed Bracca to have discovery rights. In this case, even though Mr. Shulman and Bracca are, quote, appellees, they were never given the right to discovery. They did not argue below that they were interested persons in the BVI. The only read that is there, and it's a slender one and we suggest it's nonexistent, is whether Hornbeam is an interested person, and it is not. All right. Thank you very much, Mr. Marks. Mr. Hill. It pleases the Court. William Hill on behalf of the subpoena respondents. I will address the fourth point of error raised in our briefs and argue that the District Court erred in ordering pre-filing depositions from subpoena respondents when Hornbeam refused to confirm whether the subpoena respondents would be defendants in what was supposedly contemplated BVI proceedings but are now revealed to be mythical BVI proceedings, or a contemplated domestic proceeding, which is what we actually have, either of which would make discovery improper under 1782. My argument focuses primarily on the first discretionary factor under Intel on Federal Rule 27 and the public policy behind 1782. I will also address the anti-chicanery concerns articulated by this Court in its opinion in Glock v. Glock. Intel Factor No. 1 requires that even if all the statutory factors for 1782 are met, courts must address whether the person from whom discovery is sought is a participant in the foreign proceeding. In the Intel case itself on remand, after the Supreme Court established the discretionary factors, the District Court denied the discovery sought on the basis of the first discretionary factor because, in that case, the respondent was a participant in the foreign proceeding. So this factor requires a court to know who are the participants in a contemplated proceeding. Since these are, as you say, just discretionary factors, sort of a multi-factor balancing test, why wouldn't it be okay for the District Court to decide? The District Court's the one who is going to balance the factors to decide, you know, participant, non-participant, it's really just not going to affect the overall balance for me here, so I don't really need to know. Well, there are circumstances, and if articulated we could review them, there are circumstances, I suppose, where the judge could decide that even a participant was not, that even being a participant should not excuse the discovery going forward, but there would have to be findings on that. The court has to address the factor and come to a decision as to whether or not the discretionary factor should preclude the discovery. Is that right? I mean, I would think in a multi-factor balancing analysis a court could say I find factors 2, 3, and 4 support, factor 1's a wash, and so good to go. They are discretionary, and certainly in certain circumstances there could be reasons for holding the balance one way or the other, but the factor must be addressed, particularly here where we raise the issue and we press the court to address discretionary factor number 1, and the problem here, ordinarily, the first discretionary factor is not that difficult because you've got an ongoing proceeding and the court simply says who are the participants. Here with a contemplated proceeding, the only way to know who are the contemplated participants is for the court to require the party seeking discovery to articulate who is going to be a participant and who is not going to be a participant, and that was not done here despite our demands. Is it your position that that first intel discretionary factor requires denial of a 1782 application if the target of discovery, the non-party here, is likely or surely to be made a party in the foreign proceeding? Well, it is a discretionary factor, but nonetheless, we do believe that if, the court has to be in that position, and without knowing who the parties are, the court cannot make that assessment. How are you supposed to know who the parties are before they file suit? You ask them. You ask them. Because the only source... And they tell you, we don't know until we get discovery. Then what? Well, again, here there were indications beyond we don't know. There was simply a refusal to answer the question, and we now know that the contemplated participants included all of my clients because they've been sued in Delaware, and that's simply a matter of the record now. We know that the contemplated BVI proceeding was mythical, and that in reality, I see my time is up. May I... You can finish up, please. Sure. We now know that they were actually contemplating suing my clients in Delaware State Court, and that eviscerates the whole basis for 1782. 1782 is for foreign proceedings, not domestic proceedings, and it was entirely unfair to submit my clients to pre-litigation discovery without even knowing what the allegations would be. One-sided discovery, where they had no opportunity to take discovery of the other side. This would never be allowed for American citizens in a proceeding that was to proceed in the United States. And that's what happened here. They were subjected to pre-litigation discovery that turns out to have had no legal basis to go forward, and it was entirely unfair. And we ask that it be reversed, and that the court order that the documents and deposition transcripts be destroyed. Thank you. All right. Thank you very much. Please, the court. My name is Tucker Byrd, and I have the privilege of representing the Appellee Foreign Beam Corporation. I think it's always helpful. Having been part of this, nightmare is probably a too strong a word, but having been part of this thing for a while, on the other side, is this thing ever going to end? Your Honor, I... Or are we going to be here two or three years from now with someone else, maybe the same gentleman or maybe some other lawyer saying, they haven't filed suit yet? That's a fair question. And since I'm new to this case for four months, the novelty is not yet worn off. I think I know, and I know, of course, from my personal dealings with the client, that the climatic conclusion will be reached in the near future. For purposes of today, Your Honor, I think it's always helpful to recognize what this court has said about the purpose of 1782, very instructive on a philosophical level. One, is to provide assistance to a foreign tribunal, and the reason is, number two, to engender a reciprocal assistance from a foreign tribunal by way of an example. And the purpose of this, that's why it has such a flexible feature. What the process is not intended to do is to empower a court to serve as a gatekeeper for a foreign tribunal on issues of the substantive merits for substantive legal issues. I know, but at least part of the impression that a reading of this record leaves me, and it may not be reversible, is that there is no foreign proceeding. There may not be a contemplated foreign proceeding. And there's some stuff going on in the United States. And what Mr. Hill said rings true to at least some degree, which is it looks like your client is at least partially using 1782 procedures, which are going to be to help, as you said, a foreign tribunal. So that you can get one-sided discovery for related litigation you've already filed against some, although not all, people and entities in the United States. It seems a little bit off kilter. Well, and I would offer this, I say, way to look at this, your honor. Number one, I think it's, the important thing is to look at the assessment of the application contemporaneously at the time it was considered by the court. There's always going to be a danger if you look at an action post hoc and try to attribute things that happened since to motivations that preceded it. For example, the facts get developed through discovery. Circumstances change. I mean, a myriad of things have happened. Lawsuits get filed. The question is, at the time, was it reasonably contemplated that a BVI action would be filed? And in fact, we know from the record that twice before, Hornbeam had gone to BVI to try to pursue this. And I would suggest this, your honor, members of the panel. If one were going to try to get discovery through this proceeding, to use in a domestic proceeding, I may not be the most efficient lawyer in the world, but I would certainly think it'd be a side easier to go ahead and file domestically instead of five years to get discovery. Remember, discovery was just completed last year. I'd probably get it in five minutes through a domestic proceeding. So the argument that we somehow went through this convoluted process in order to get domestic discovery just doesn't really pass the logic test. Can I ask you a question? I guess your adversary focused most of his attention on the interested party requirement. Yes, sir. Do you defend the district court's reasoning with respect to interested party? Because I take it you don't deny that you've got the burden to demonstrate the propriety of the discovery, correct? I agree with the conclusion of the judge. I think the analysis is one of simply a prime facie case. I don't think it's the promise of the court to decide the substantive issue. But so when, so just help me kind of unpack this step by step. You don't deny that you've got the burden to prove the propriety of the discovery. To make the prime facie case, I would say. Okay, but yeah, we'll get to that. Yes. So, but when the district court says that the evidence is in equipoise, if you've got the burden, that's a problem for you. So your response is prime facie case, right? Exactly. So, but as I read the cases, I don't know how you pronounce it, Clarici? Yes. And Consorcio, the phrase prime facie is not being used in the McDonnell-Douglas phraseology like kind of sort of lesser, minimal. But instead, it's being used to distinguish the intel factors. It's like the threshold showing and then the discretionary factors. And if that's right, and if you've got a real live honest goodness preponderance burden with the threshold factors, then the district court's reasoning anyway. I'm not saying the result. Just testing the reasoning. Then that whole equipoise thing seems a little off to me. Well, I guess I'll respond to this way, Your Honor. Number one is it'd be a de novo issue. If one were to interpret exactly what the Panamanian law would be. But I think by prime facie, what it doesn't say is preponderance, the way they argue in their briefs, as if it has to be more likely than not. And nonetheless, if you look at, and by the way, if you just simply read the opinions of the two experts, what their expert does not talk about is Article 86 and Article 528A, which Justice Lopez says the following. And you think about it this way. At the end of the three year winding up period through the liquidation, the entity still has, and this is a very interesting phrase, the corporation still has a legal personality. It's sui generis. It still exists. And what it says further is it almost, really it says in perpetuity, that the corporation can continue to pursue claims and to defend itself. It cannot conduct new affairs, certainly. But its legal personality exists. And, you know, Ron, you made 100. Indefinitely? Well, it doesn't say that. It doesn't say there's termination. No, no, that's my question to you. Well, one would. This thing is still going on 10 years from now. And it's all like, it can keep going. Well, I would put it back to you this way. If the litigation itself took years, maybe the appeal would take years. It could, in theory. There's no hard, fast rule in the statute. It simply says the legal personality exists. And what do you do with the three-year period? Well, the three-year period, it sets some certain criterias about things that it can do. But it says at the end of the three-year period, it has to continue, its legal personality continues for purposes of collecting and also for purposes of defending. It has a very narrow, a narrower band, I would submit. And I would say this. There's one point about this that comes out in the record. You know, they would say that somehow Hornbeam has been disembodied. It doesn't exist. And these rights that inherit in it as the registered shareholder of the corporation, what happens to those rights? In the record, it cites the fact that Hallowell will not register the shares in the name of BRCA. So they have, in essence, tried to create what I'll call, for lack of a better word, a trick bag. They won't let BRCA be the shareholder. But now they claim that Hornbeam, which was the registered shareholder, cannot pursue the claims. Something would have to give. And I think the teaching out of all these cases, quite frankly, is that what the court ought to do is not serve and decide the ultimate substantive issue. That will be an issue that the trier of the court deciding the law and the facts will have to weigh in upon at some point. And I think this gets to the point of the prime facial nature of this. It should not be the dispositive issue. Because otherwise, you'd be mandating for the court, wherever it sits, to decide exactly as a matter of fact and law who should win on that issue, which leads me to the other point about the reasonable contemplation of litigation. They make a big deal out of this. And we fully acknowledge the fact that we're five years into this and a BVI case has not been filed. I would suggest this. And we know this from the cases, the Consortio case being one of them. The 1782 is not a use it or lose it rule. In fact, you can get the information and never file a lawsuit. And we do know from the teaching of the Glock case that evidence obtained in a 1782 action may be redeployed in a domestic proceeding. Now, the applicant would have to go to the district court and get permission to do that. But it certainly is a cognizable way of using the evidence. But I think to look back now and say, well, because you didn't file, you never intended to file it, I think is not fair to what was before the court in the record. And moving on to the, um. It may not definitively answer that question, but it pushes the argument a little towards it. Well, it is. The further the time goes and you do nothing, the more it seems like this was not really legitimate. But here's the point I would make out of that. You'd have to sort of apply to what would be the motive then. They offer a motive. One of the motives they offer is that we did this to get discovery that we could use against, that we'd use against the Kolomoisky, for example, domestically. Well, that would be the most convoluted way to get discovery in existence. Why would we go through five years to get discovery that we could get domestically? Because litigation is not always economically sound. And you might be exerting pressure on other parties, given the history of these disputes, to squeeze on one side to see if you can get leverage on the other,  because they can't get discovery from you, might be somewhat beneficial. Except this. I can't think of a more inefficient way to get discovery than to go through 1782 for this reason. You have to go to the district where the evidence and the witnesses are to obtain the information. That's five separate proceedings. I mean, if that is a strategy, it's sort of a self-inflicted wound then. Nobody would logically think, I'm going to start a multitude of cases to get information I can get out of one case. And with respect to the issue about, they make this argument about, well, it's not reciprocal discovery. Well, first of all, that's inherent in a 1782 action anyways. It is always sort of a, it's a one-sided affair. That's just the way the process works. And when they make the argument that somehow Rule 27, they sort of engraft that onto 1782. I think the court has addressed that issue before. That certainly the procedural requirements set forth in 1782 do not have the same criteria in a Rule 27. And by the way, if you applied Rule 27, and sort of overrode the powers and the protections of 1782, you would essentially gut the statute. Because if the purpose of the discovery is only to perpetuate the evidence, why have 1782 at all, quite frankly? And finally, I would offer this. Because this is the same point that they make over and over again, which is, listen, you haven't filed a BVI action. And the question is, at the time this process began, was that reasonably contemplated? I think the record clearly reflects that it was. Sometimes circumstances change. And for example, you don't really know who the participant might be in the litigation. And they make a big issue out of, well, now all these targets are coming out. Why didn't you identify them initially? Well, we do know from 1782 that you don't have to give like a Miranda warning that says, I may and I intend to name you in a foreign proceeding. First of all, when you do that, according to their logic, the discovery would have to stop altogether. And you don't have to give a target letter. The purpose of the 1782 is to let you get into the evidence, figure out what you have, and then proceed from there. Unless the panel has any other questions, I thank you for your time. All right. Thank you very much. Thank you. Judge Nelson, I want to address one of your issues later. But what did we just hear? Counsel did not say that they're going to file in the BBI. That was Judge Jordan's first issue. Where are you? And if he had told me they're going to file, what does that do for me? But he didn't tell you that. Because we know that the question is the same. Because it's an existential unknown. He could leave the courthouse today, and his client could say, we've changed our mind. We're not going to do it right now.  Well, in a sense that we're not, Your Honor, because we know what they have done. They knew who they were going to sue. They sued them in Ohio. What happened here is they brought five ex-party proceedings. They took discovery in New York. We didn't know about it. They didn't notify our people of the subpoenas. They got the evidence. They used it in Ohio. They got caught. We found out about it. So there was a logic to what they were doing. Once we got involved, we opposed the discovery in Ohio. It was stayed. They never took it. Obviously, they got it in Alabama. And here we are. Let me ask you a question about remedy. Let's say you are right on the motion to vacate. What's the remedy for you? The remedy is simple, Your Honor. You vacate the order granting the discovery. And by the way, there's a protective order here that says they had to use it within a year. They didn't. That has already expired. We're trying to get the district court to order it destroyed based on that. But it's simple, Your Honor. They have to destroy the discovery that they have, including the deposition transcripts. Even though the order on the initial 1782 application was fine, at least not reversible error at the time it was entered? In other words, you enter an order in 2015. That's right. At the time. It's an ex parte order. I know it's an ex parte order. At the time it's entered, there's no basis for reversal. It doesn't get reversed. It doesn't get appealed in any way, shape, or form by an intervener or by anyone else. And now you're seeking to vacate that order. And you're seeking to undo, not to prevent things from continuing to happen, but to undo everything that happened during that three to four year period.  It's a question. What's the, from what place do we get the authority or the power to give you the remedy that you think is appropriate? An order was entered ex parte. We opposed it. The district court decided it de novo. She decided, she granted the application herself. We appealed it. If that decision was wrong, the discovery was improperly taken. No, but my question is, there's a possibility. Although I know you don't think so. There's a possibility that at the time that initial order was entered, the record justified and allowed that order to be entered. And the possibility that now, if you are correct, the circumstances have changed to the point where on a new look, you're like, oh, OK, no. But that doesn't mean that everything that happened between 2015 and now is necessarily illegitimate. I guess it's the notion between a voidable and a void judgment. Your Honor. It's not a perfect analogy, but it's somewhat close. But at the end of the day, the order granting the application was an error. At the end of the day, the discovery that was taken that was an error. But you're relying on things that have occurred now to show that it was error then. And that's not the way things work, because when the district court is looking at, or at least not the way they necessarily work, when the district court is looking at a discrete record in 2015, things may look, may appear, may seem to be very different than they look today with three years of further litigation. But Your Honor, the discovery was not issued pursuant to the 2015 order. The district court did not accept that order. The district court entered its own order in 2018 granting the discovery. That is the order that authorized, that is the order. I thought the district court, maybe you're right. I thought the district court interpreted your motion to vacate as vacating the 2015 orders. No, Your Honor. She dealt with it de novo. I know it was de novo. I'm not disagreeing with you there. But I thought that the district judge viewed your motion to vacate as a motion to vacate what happened in 2015. At the end of the day, Your Honor, she essentially vacated the 2015 order because she didn't accept it, because she didn't know whether it was a reporter. She didn't want to rule on whether it was a reporter recommendation or whether it was a final order, so she just did it de novo. So at the time the discovery was granted, Your Honor, Hornbeam had already dissolved. That issue was preserved at the time that the district court entered her omnibus order. So if we were right on our point one, and we believe, of course, they have the burden of proof. They can't just skate it by. There's no separate standard. Say it was an American company that dissolved and there was a statute in Florida that said three years and you're done. You wouldn't say, well, we're going to hold the Americans corporation to that standard, but we're just not going to take a look at what the Panamanian law is. This court, in my view, has an obligation to decide the issue of laws de novo and ought to do it now so we don't bounce up and down. But Judge Jordan, to your point, the discovery was issued based on the 2018 order. They had to reissue subpoenas. The original subpoenas she held, the original subpoenas were invalid. They had to reissue the subpoenas in 2018, and by that time Hornbeam had dissolved. One other point. One of the things that district court did was narrow the scope of discovery. She did. Right. The first page of the district judge's order says that she finds that the discovery granted by the 2015 order is overly broad. She did find that. She did. What's the relationship between the 2015 order and the 2018 order? She was starting on the tablet, with the word tableau, tablet. She was starting on the basis that this is what the magistrate judge did. That was what we objected to. She said, you know what? I'm just going to . . . I'm just going to do this de novo. I'm not going to accept what the magistrate judge did. Those subpoenas are too broad. These are the subpoenas that you have to issue. And then they had to issue the new subpoenas. But one other point, Judge, I'd like to cite to your honor some cases, because I don't mean this in the pejorative sense, but I don't think the court should, you know, put its head in the sand. We know what the record is now. They didn't file in the BVI. They sued everybody that they said they were going to sue in the BVI in Delaware, and they did it this year. That's part of the record. There's a lot of case law in this circuit. Schwartz v. Millionaire, 341 F. 3rd, 1222. Cabo Santa v. Standard Fruit Company, 883 F. 2nd, 1553. Young v. City of Augusta, 59 F. 3rd, 1160. All those cases stand for the proposition that this court can take notice and consider things that happened after the district court ruled if it's going to have an effect on the decision. And you have the equity. We've taken you way over your time. I know. So you've got about 30 seconds to wrap up if you'd like. Your honor, so my point, again, quickly, is that this was de novo. The subpoenas were issued after Hornbeam dissolved. If your honor finds that it doesn't exist and three years has meaning, then it should be reversed. We cite to the Supreme Court cases, if discovery is improvidently granted, then the remedy, obviously, is that it be destroyed. And that's in the protective order itself. And I'd urge your honor, both in terms of Mr. Hill and us, to consider what actually happened. They didn't file. They filed in Delaware. And it was inappropriate to use this procedure initially to take discovery to use in Ohio. Let's not forget. Then they filed in London. So one of the other motives was to file in London, as Mr. Shulman did. And here they are in Delaware. Thank you, Judge. OK, Mr. Marks. Thank you. Very briefly, as to the requirement to address the first factor, the requirement is in the Intel creation of the factor itself. The whole policy is that when the person from whom discovery is sought is a participant in the foreign proceeding, the need for 1782 aid generally is not as apparent as it ordinarily is when evidence is sought from a non-participant. So if you've got a participant from whom you're seeking discovery, the district court ordinarily would say, go get your discovery over where you're having the lawsuit. We don't need to be an arm of the foreign court to help with discovery that you can get anyway. Second, I'm actually surprised that opposing counsel cited the Glock case to say that the evidence can be redeployed. Yes, theoretically, evidence can be redeployed under certain circumstances. But that's not what happened here. Here we had a protective order that said you can't use this discovery anywhere except in the BVI unless you come back to the court and get permission. And that was not done. So this is exactly the opposite of what Glock allows. This is what Glock warns can be a problem. I see my time is up, Your Honor. Thank you very much. All right, thank you very much, Mr. Hill. Thank you all very much.